The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS
SMG
Independence Center, 701 Market Street, 4th Floor
Philadelphia, PA 19107

(b) COUNTY RESIDENCE OF FIRST LISTED PLAINTIFF   N/A
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS
Ungerboeck Systems International, Inc.
87 Hubble
O'Fallon, Missouri 63368

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Sandra A. Girifalco, Esquire (215) 564-8064
Stradley, Ronon, Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103-7098

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated or Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) .

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury — Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | SOCIAL SECURITY | ☐ 850 Securities/Commodities/Exchange |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 371 Truth in Lending | LABOR | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS — Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights / ☐ 540 Mandamus & Other | | | ☐ Other Actions |
| | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

Equitable relief and DEMAND to exceed $150,000

Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions): N/A
JUDGE_____ DOCKET NUMBER_____

October 23, 2006    SG1358

DATE
UNITED STATES DISTRICT COURT

SIGNATURE OF ATTORNEY OF RECORD
Sandra A. Girifalco

# IN UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

SMG,

        Plaintiff,

vs.

        : CIVIL ACTION NO. _____

UNGERBOECK SYSTEMS INTERNATIONAL, INC.,

        Defendant.

: JURY TRIAL DEMANDED ON ISSUES
: TRIABLE BY JURY

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus — Cases brought under 28 U.S.C. §2241 through §2255. ( )

(b) Social Security — Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration — Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos — Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management — Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management — Cases that do not fall into any one of the other tracks. ( X )

| October 23, 2006 | SG1358 | Plaintiff |
|---|---|---|
| Date | Sandra A. Girifalco, Attorney-at-Law | Attorney for |

| 215-564-8064 | 215-564-8120 | sgirifalco@stradley.com |
|---|---|---|
| Telephone | FAX Number | E-MailAddress |

(Civ. 660) 7/95

L # 513057 v.1

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

    (a)    The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

    (b)    In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

    (c)    The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

    (d)    Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

    (e)    Nothing in this Plan in intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

### SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SMG,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action |
| v. ) | |
| ) | Case No. **06 -4737** |
| Ungerboeck Systems International, Inc., ) | |
| ) | Jury Trial Demanded on Issues |
| **Defendant.** ) | Triable by Jury |

### COMPLAINT

NOW COMES plaintiff SMG ("SMG" or "Plaintiff"), by and through its attorneys, and alleges for its complaint against defendant Ungerboeck Systems International, Inc. ("USI" or "Defendant") as follows:

### Nature of the Action

1. This is an action for breach of contract and tortious interference with prospective economic advantage arising out of Defendant's ongoing breach of a written software license agreement by and between SMG and USI. SMG seeks damages, injunctive relief, attorneys' fees and such other relief as the Court deems appropriate.

### Parties

2. Plaintiff SMG is a Pennsylvania Joint Venture in general partnership form with its principal place of business in the Commonwealth of Pennsylvania.

3. Defendant USI is a Missouri corporation with its principal place of business in the State of Missouri.

# 513017 v. 1

**Jurisdiction and Venue**

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (a)(2) because a substantial part of the events giving rise to SMG's claims occurred in this judicial district.

**Facts**

6.      Plaintiff SMG provides sophisticated management services at stadiums, arenas, convention centers, and theatres worldwide, including booking, marketing and sales, construction and operations services for these sports, convention and entertainment venues.

7.      Defendant USI licenses specialized business management software products for the events management industry.

**THE SMG/USI AGREEMENT**

8.      On or about August 27, 2002, SMG and USI executed and entered into a written Software Licensing Agreement (the "Agreement") pursuant to which USI agreed to license the use of certain Event Business Management Software ("EBMS") products to SMG. A true and correct copy of the Agreement is attached hereto as Exhibit 1.

9.      USI negotiated the Agreement with SMG via telephone calls, letters or emails to personnel at SMG's headquarters in Philadelphia, Pennsylvania.

10.     The Agreement represented a substantial commitment by SMG to USI. The Agreement also offered USI a significant opportunity to grow its business and to place its specialized EBMS product line at a sophisticated multi-site client that is the events management industry leader.

2

# 513017 v. 1

11. After the Agreement was executed, SMG and USI devoted hundreds of hours to complete a pilot project necessary to modify and/or enhance the EBMS products to meet SMG's specific business requirements. A substantial portion of the work on this pilot project was completed at SMG's headquarters in Philadelphia, Pennsylvania and at SMG's participating pilot locations. During this process, SMG invested significant time, monetary and human resources and trust in USI.

12. SMG invested its time, money, personnel and trust in USI based upon USI's express agreement not to market, for a limited period of time, the EBMS software to three of SMG's primary competitors. This restriction, among other things, protected SMG from the risk that USI would use the expertise and knowledge that USI developed from SMG to SMG's detriment in USI's relationships with SMG's primary competitors. Specifically, the parties memorialized this understanding at paragraph 5 of Addendum A to the License Agreement (the "Non-Compete Clause"):

> 5. <u>Non-Compete Clause</u>:
>
> In order to protect CLIENT [SMG] and validate the CLIENT/USI partnership, USI agrees not to market the Software [EBMS] to the vendors listed below for a period of five years beginning July 1, 2002:
>
> - Global Spectrum, Philadelphia, PA
> - Compass Management, Ames, IA
> - Promotion Management, Inc., Green Bay, WI

*See* Exhibit 1 at Addendum A, § 5.

13. SMG anticipated that its license to use the specialized EBMS products, in conjunction with the Non-Compete Clause, would afford SMG a competitive edge in the industry. The EBMS products constitute a specialized, comprehensive and integrated events management software system for the convention centers which SMG manages. As such, SMG's

ability to provide this product package to its customers represented a competitive advantage for SMG. USI understood the significance and importance of the obligation memorialized in the Non-Compete Clause.

## AFTER SMG REFUSES TO RELIEVE USI OF ITS CONTRACTUAL OBLIGATION, USI SECRETLY BREACHES THE OBLIGATION

14. On several occasions in 2005 and early 2006, during weekly telephone calls to personnel at SMG's headquarters to review the status of EBMS implementations, USI's President, Dieter Ungerboeck, requested that SMG relieve USI of its obligations under the Non-Compete Clause.

15. SMG, however, refused to relieve USI of its obligations under the Non-Compete Clause given the continuing importance of the protection afforded to SMG's business based on the provisions of that clause. Mr. Ungerboeck requested a meeting with SMG's senior officers to discuss this matter.

16. At a January 31, 2006 meeting at SMG's headquarters, Mr. Ungerboeck met with John Burns, SMG Senior Vice President and Chief Financial Officer, and Merritt Wolfe, SMG Vice President of Information Systems. Mr. Ungerboeck made a personal plea for SMG to waive the Non-Compete Clause of the Agreement, but would not disclose why he wanted the waiver or to whom he intended to market his product.

17. Mr. Burns was unequivocally clear that SMG would not waive the Non-Compete Clause of the Agreement and explained that SMG considered this provision to be extremely important. Mr. Burns also explained that it was of particular concern to SMG that Ungerboeck not market his product to Global Spectrum.

18. Mr. Ungerboeck acknowledged SMG's response to his requests and indicated that USI would continue to honor its obligations pursuant to the Non-Compete Clause.

19. Late in the summer of 2006, SMG learned that, notwithstanding USI's contractual obligation and its commitment to honor that obligation, USI has nevertheless breached the Agreement. Through a Freedom of Information Act ("FOIA") request to the City of Cincinnati, SMG obtained the proposal submitted by Global Spectrum in response to an RFP for management of the Cinergy Center, a convention center owned by the City of Cincinnati. The proposal revealed to SMG for the first time that USI had marketed the EBMS software to Global Spectrum in violation of the Agreement.

20. Specifically, Global Spectrum's bid touted its "utilization of Ungerboeck's Event Business Software (EBMS) system at all of its convention centers." The Global Spectrum bid further detailed its relationship with USI as follows:

> **Event Business Management Software**
>
> <u>Global Spectrum's convention centers utilize the latest Ungerboeck's Event Business Management Software (EBMS),</u> which allows us to create a seamless and well integrated management system with our CVB, hotel and other partners.
>
> The Cinergy Center currently uses an outdated EMS version. We will install the new version that we use nationwide. This will make it very easy for the GCCVB and hotels to communicate with us regarding event bookings and scheduling activities. The GCCVB will be added as a "remote" user. <u>Minimal cost will be involved because of Global Spectrum's bulk purchase agreement with Ungerboeck.</u>

(Emphasis added).

21. Global Spectrum's bid for the provision of management services to the Cinergy Center was accepted. On or about May 1, 2006, the City of Cincinnati awarded Global Spectrum the contract for those services.

22. SMG also submitted a bid for the management contract at the Cinergy Center. SMG's competing bid was unsuccessful. By breaching the Agreement with SMG and

5

# 513017 v. 1

developing a relationship with Global Spectrum, USI caused SMG to lose its competitive advantage over Global Spectrum on this bid.

23. Global Spectrum is headquartered in Philadelphia, Pennsylvania. Upon information and belief, USI has marketed its EBMS products to Global Spectrum at its Philadelphia, Pennsylvania headquarters in breach of the Non-Compete Clause.

24. Upon information and belief, as a result of USI's improper marketing efforts, USI and Global Spectrum have reached certain agreements regarding the use of the EBMS products at Global Spectrum venues, in violation of the Agreement.

25. After it became aware of USI's marketing efforts in violation of the Non-Compete Clause, SMG contacted USI to obtain more information about USI's marketing efforts regarding and relationship with Global Spectrum. While USI provided a conclusory denial that it had breached the Agreement, USI nevertheless refused SMG's request for further information relating to (i) USI's provision of services at venues managed by Global Spectrum, (ii) the nature and dates of any understandings between USI and Global Spectrum; and (iii) the dates and substance of communications between USI and Global Spectrum.

26. SMG has fully complied with all of its obligations pursuant to the Agreement.

### Count I
### Breach of Contract

27. SMG realleges and incorporates herein by reference paragraphs 1 through 26.

28. SMG and USI entered into a valid and enforceable Agreement which expressly prohibited USI from marketing its EBMS products to SMG's competitor, Global Spectrum, for a limited period of time.

29. USI has breached the Agreement by marketing the EBMS products to Global Spectrum, and by entering into agreements with Global Spectrum regarding Global Spectrum's use of the EBMS products.

30. As a direct and proximate result of USI's breach of the Agreement, SMG has suffered, and will continue to suffer damages in an amount exceeding $75,000.

31. As a further direct and proximate result of USI's breach of the Agreement, SMG has suffered, and will continue to suffer, damages to its reputation and unique status in the market. Such damages constitute irreparable harm for which USI has no adequate remedy at law. In order for SMG to derive the negotiated-for competitive advantage intended by the language of the Non-Complete Clause, USI must be enjoined from its conduct in breach of the Agreement for the remainder of the Agreement plus the period of time since USI has been in breach of the Agreement.

## Count II
### Tortious Interference With Prospective Advantageous Economic Relations

32. SMG realleges and incorporates herein by reference paragraphs 1 through 31.

33. SMG had a reasonable expectation of entering into valid business relationships (in the form of a management contracts) with convention centers and other venues based upon the Agreement.

34. At all material times, USI was aware of SMG's expectation that SMG would hold a unique status and competitive advantage in the industry based on its primary competitors' inability to offer the EBMS products.

7

35. USI intentionally, tortiously and improperly interfered with SMG's reasonable business expectancies by marketing the EBMS products to Global Spectrum in violation of the Agreement.

36. USI's intentional interference with SMG's reasonable business expectancies has and will result in SMG's loss of profits and loss of business opportunities/management contracts with convention centers and other venues, including but not limited to the management contract at the Cinergy Center.

37. USI had no justification for its intentional, tortious and improper interference with SMG's prospective economic advantage.

38. As a direct and proximate result of USI's intentional interference with SMG's business expectancies, SMG has suffered damages in an amount exceeding $75,000.

39. As a further direct and proximate result of USI's intentional interference with SMG's business expectancies, SMG has suffered, and will continue to suffer, damages to its reputation and unique status in the market. Such damages constitute irreparable harm for which USI has no adequate remedy at law. In order for SMG to derive the negotiated-for competitive advantage intended by the Agreement, USI must be enjoined from its tortious conduct in breach of the Agreement.

## Prayer For Relief

WHEREFORE, SMG respectfully requests that the Court enter a judgment in its favor and against USI as follows:

A. Enjoining USI from its breach of the Agreement;

B. Extending the Non-Compete clause for an additional period of time equivalent to the period of time USI has been in breach;

      C.      For an accounting of all revenues arising out of USI's breach of the Agreement;

      D.      For compensatory damages, in an amount to be determined at trial, resulting from USI's breach of contract and tortious interference with prospective economic advantage;

      E.      For punitive damages in an amount sufficient to punish USI for its intentional and tortious interference with SMG's business expectancies, and to deter others from such tortious interference with prospective economic advantage;

      F.      For attorneys' fees, costs and expenses;

      G.      For prejudgment interest; and

      H.      For such other and further relief as the Court deems just and proper.

Dated: October 23, 2006.

                                              SG1358
                                        Sandra A. Girifalco, I.D. No.
                                        Stradley, Ronon, Stevens & Young, LLP
                                        2600 One Commerce Square
                                        Philadelphia, PA 19103

                                        Attorneys for Plaintiff
                                        SMG

Of Counsel:

Timothy B. Hardwicke
Lisa P. Conlon
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, Illinois 60606
(312) 876-7700